UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CHARLES W. WOODRING and NANCY K. WOODRING,  )<br>)<br>   Plaintiffs,  )<br>)<br>   v.  )<br>)<br>DENISE CULBERTSON and KEITH CULBERTSON,  )<br>)<br>   Defendants.  ) | CAUSE NO. 1:04-CV-460 |

**OPINION AND ORDER**

**I. INTRODUCTION AND PROCEDURAL BACKGROUND**

Charles and Nancy Woodring were involved in a car accident with Denise Culbertson in Allen County, Indiana. The Woodrings believe that the accident, and the injuries they suffered in it, were the result of Culbertson's negligence. Accordingly, they filed this lawsuit against her, as well as Keith Culbertson, who owns the car Denise was driving.

The Woodrings filed suit in federal court in order to take advantage of the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332. The Woodrings are citizens of Ohio, the Culbertsons are citizens of Indiana, and more than $75,000 is at stake (the Woodrings seek $320,000 in damages, among other relief); therefore, the requirements for diversity jurisdiction were met when the complaint was filed. *See id.*

However, Cincinnati Insurance Company has now moved to intervene as a defendant. (Docket # 14.) Cincinnati provides underinsured motorist ("UIM") coverage to the Woodrings, and therefore it may have a financial stake in this litigation: if the Woodrings win a verdict that the Culbertsons and their insurer cannot fully satisfy (*i.e.*, it exceeds the limits of the

Culbertsons' allowable liability insurance coverage), Cincinnati might be liable to the Woodrings for the shortfall. Cincinnati thus believes that it should be allowed to intervene as a matter of right under Federal Rule of Civil Procedure 24(a). Further complicating matters, Cincinnati contends that once it intervenes, the Court will no longer have jurisdiction over the case because Cincinnati, like the Woodrings, is a citizen of Ohio.

The final wrinkle is that, while the parties were briefing the above issues, Charles Woodring settled his claims against the Culbertsons, prompting the Woodrings and the Culbertsons to file a stipulated motion to dismiss his claims with prejudice. (Docket # 18.)

After considering these motions and the relevant law, the Court finds that the motion to dismiss Charles Woodring's claims with prejudice should be GRANTED, Cincinnati's petition to intervene should be GRANTED, and the remainder of the case DISMISSED for lack of subject matter jurisdiction.[1]

## II. DISMISSAL OF CHARLES WOODRING

As noted above, the Woodrings and the Culbertsons agree that Charles Woodring's claims should be dismissed with prejudice, as the parties have reached a settlement on those claims. Although Cincinnati is not a party to the stipulated motion to dismiss Charles's claims, it received notice of the settlement (*see* Pl.'s Br. in Opp'n at 2), and it has not opposed the motion. Thus, the motion to dismiss will be granted.[2]

---

[1] Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

[2] Accordingly, all further references to "Woodring" in this opinion pertain to Nancy Woodring.

### III. INTERVENTION OF CINCINNATI

Federal Rule of Civil Procedure 24(a), subtitled "Intervention of Right," provides in relevant part:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The Seventh Circuit has parsed this language into a four-part test, under which a party wishing to intervene of right must show (1) timeliness; (2) an interest relating to the subject matter of the main action; (3) at least potential impairment of that interest if the action is resolved without the intervenor; and (4) lack of adequate representation by existing parties.  *E.g., Reid L. v. Ill. St. Bd. of Educ.*, 289 F.3d 1009, 1017 (7th Cir. 2002).

The first requirement, timeliness, is "essentially . . . a reasonableness standard: potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly."  *Nissei Sangyo Am., Ltd. v. U.S.*, 31 F.3d 435, 438 (7th Cir. 1994).  In this case, Cincinnati moved to intervene just over two months after the complaint was filed, and before even a initial scheduling conference had taken place.  (*See* Docket # 1, 12, 13.)  Woodring does not contend that Cincinnati's intervention is untimely, and wisely so – Cincinnati's prompt action easily satisfies the "reasonableness standard."

The Court's consideration of the second, third, and fourth elements is informed by the Indiana Court of Appeals's well-reasoned decision in *Westfield Ins. Co. v. Axsom*, 684 N.E.2d 241 (Ind. Ct. App. 1997).  There, the court considered the precise question presented in this case: whether a plaintiff's UIM carrier may intervene as of right in the plaintiff's suit against a

potentially underinsured defendant.  684 N.E.2d at 242.  The court, construing an Indiana procedural rule identical to Rule 24(a) and applying the same four-part test at issue here, held that the insurer could intervene as of right.  *Id.* at 245.  While *Axsom* concerns only Indiana procedural law and thus is not binding on this Court, *see Hanna v. Plumer*, 380 U.S. 460, 465 (1965), it nonetheless carries great persuasive value, as detailed below.

The second requirement for intervention is that the intervenor have an interest relating to the subject matter of the case.  Here, the subject matter is the Culbertsons' liability to Woodring for injuries sustained in a car accident, and Cincinnati certainly has an interest in that, as it may be contractually liable to Woodring if the Culbertsons (and their insurer) cannot satisfy a judgment entered against them.  As the *Axsom* court noted, a UIM carrier's contractual liability to the insured plaintiffs is "inseparably tied to the legal liability" of the defendants.  684 N.E.2d at 244 (quoting *Vernon Fire and Cas. Ins. Co. v. Matney*, 351 N.E.2d 60, 64 (Ind. Ct. App. 1976)).  In other words, a verdict against the Culbertsons here would be "but the first link in an unbroken chain leading to the contractual liability" of Cincinnati; thus, Cincinnati has an interest in the subject matter of this case.  *Id.* (quoting *Matney*, 351 N.E.2d at 64).

The third requirement is that Cincinnati must show potential impairment of its interest if this case is resolved without its intervention.  This requirement is easily fulfilled, because Cincinnati will likely be bound by any judgment that Woodring obtains against the Culbertsons in this suit.  Ohio law (which presumably applies to the insurance contract between Woodring and Cincinnati, both citizens of Ohio) provides that:

> While an insured may be able to establish a legal entitlement to damages from an underinsured motorist by means other than a lawsuit against the underinsured motorist, a final judgment rendered as a result of such a lawsuit generally will be conclusive as between the insured and his insurer, regardless of whether the

insurer has consented to the prosecution of the lawsuit.
*Motorists Mut. Ins. Cos. v. Handlovic*, 492 N.E.2d 417, 419 (Ohio 1986).  In other words, if Woodring secures a judgment against the Culbertsons and then makes a claim to Cincinnati under her UIM policy, Cincinnati will likely be precluded from contesting the Culbertsons' liability or the damages awarded, even though those issues directly affect Cincinnati's contractual liability to Woodring.  This qualifies as a potential impairment of Cincinnati's interest and thus satisfies the third requirement for intervention as of right.  *See Axsom*, 684 N.E.2d at 244.

Finally, Cincinnati must show that its interests are not adequately represented by the existing parties.  This is the only element of the four-part test which Woodring contests; she argues that Cincinnati's interests are already represented, because unless she gets a settlement or verdict exceeding the Culbertson's policy limits with their insurer (*i.e.*, $100,000), "Cincinnati has no interest in this case." (Pl.'s Br. in Opp'n at 1.)  That is correct, but it is only half the story.  Woodring fails to understand that if she secures a settlement or verdict of more than the Culbertsons' $100,000 policy limit (a distinct possibility, as she seeks at least $160,000 in damages (*see* Compl.)), Cincinnati *will* have an interest in this case, and one that is unique to it.  That is, neither the Culbertsons nor their insurer have an interest in limiting their liability beyond $100,000, because Cincinnati will be on the hook for the sum awarded over that amount.  Therefore, Cincinnati's interests are not adequately represented by the existing parties.  *See Axsom*, 684 N.E.2d at 244-45 ("once the [defendant's policy] limit has been exhausted, neither [the defendant] nor [its insurer] has an interest in limiting [the UIM carrier's] liability").

In sum, for the same reasons persuasively offered in *Axsom*, Cincinnati has satisfied all

four requirements for intervention as of right.  Thus, its petition for intervention will be granted.

## IV. DISMISSAL OF REMAINING CLAIMS FOR LACK
## OF SUBJECT MATTER JURISDICTION

As noted previously, this case is in federal court only because it originally met the requirements of diversity jurisdiction: both plaintiffs were citizens of Ohio, both defendants were citizens of Indiana, and more than $75,000 was at stake.  *See* 28 U.S.C. § 1332.  However, the intervention of Cincinnati as a defendant calls this Court's jurisdiction into question, because Cincinnati is a citizen of Ohio like Woodring, and "diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff."  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).  Indeed, if the Woodrings had originally sued both the Culbertsons and Cincinnati, the Court would clearly lack jurisdiction over their case.

But that does not necessarily mean that the Court lacks jurisdiction now, after Cincinnati's intervention.  The Seventh Circuit has addressed this precise issue, holding as follows:

> Like every interesting legal principle, the rule that there must be complete diversity to sustain diversity jurisdiction is not absolute.  A pertinent exception is that if the nondiverse party comes into the case by intervening in it, his presence will not deprive the court of jurisdiction unless the intervenor was an indispensable party when the complaint was filed.  Federal jurisdiction is determined by the facts as they exist when the case is filed, and not by what happens later, . . . as otherwise a defendant could defeat a diversity suit simply by moving to the plaintiff's state after suit was filed.  So the fact that a resident of the plaintiff's state intervenes will not require the plaintiff to abandon his suit unless the resident was an indispensable party at the time the suit was filed – in which event the plaintiff should have joined him at the outset, and if he had done so the court would have known that complete diversity was lacking.

*Am. Nat'l Bank and Trust Co. of Chicago v. Bailey*, 750 F.2d 577, 582 (7th Cir. 1984) (internal citations omitted); *Salt Lake Tribune Publ'g Co. v. AT&T Corp.*, 320 F.3d 1081, 1095-96 (10th

Cir. 2003); *Costain Coal Holdings, Inc. v. Resource Inv. Corp.*, 15 F.3d 733, 734 (7th Cir. 1994); *see also* 28 U.S.C. § 1367(b). Thus, the Court lacks jurisdiction only if Cincinnati was an indispensable party at the time this suit was filed.

     A party is indispensable if "there is no way to structure a judgment in the absence of the party that will protect both the party's own rights and the rights of the existing litigants." *Thomas v. U.S.*, 189 F.3d 662, 667 (7th Cir. 1999). The Seventh Circuit has expressed this standard as a four-factor balancing test, requiring the Court to consider (1) whether a judgment rendered in the party's absence might be prejudicial to that party or to the existing parties; (2) the extent to which relief can be tailored to avoid prejudice to the party; (3) whether a judgment in the party's absence would be adequate; and (4) whether the plaintiff has an adequate remedy if the action is dismissed. *U.S. v. Tribal Dev. Corp.*, 100 F.3d 476, 478-79 (7th Cir. 1996) (citing Fed. R. Civ. P. 19(b)). In this case, all four factors point to the conclusion that Cincinnati was an indispensable party at the time of filing.

     As to the first factor, a judgment rendered in Cincinnati's absence might well be prejudicial to Cincinnati. As explained in Section III, *supra*, Cincinnati would likely be bound by any judgment rendered in this case when determining its contractual liability to Woodring. *Handlovic*, 492 N.E.2d at 419. Moreover, none of the other parties in the case share Cincinnati's interest in limiting any damages awarded beyond the $100,000 limit of the Culbertsons' insurance policy. *See Axsom*, 684 N.E.2d at 244-45. Therefore, potential prejudice to Cincinnati is easily shown. And as to the second factor, Woodring does not offer any suggestions for how a judgment could be tailored to avoid this prejudice, nor are any methods for doing so apparent.

     The third factor, adequacy of a judgment rendered in Cincinnati's absence, also cuts in

favor of indispensability.  If Woodring secures a judgment of more than $100,000 against the Culbertsons, one of two outcomes will result, both of which are disagreeable.  On one hand, Cincinnati might be bound by the judgment under *Handlovic* or a similar holding, meaning that its contractual liability to Woodring would have been partially determined in a proceeding to which it was not a party and in which its interests were not represented.  On the other hand, Cincinnati might find some way to escape being bound by the judgment; in that case, Woodring would have to relitigate the issues of the Culbertsons' liability and the proper damages in a separate suit against Cincinnati, possibly reaching a contrary result to the proceedings here.  Either way, a judgment rendered in Cincinnati's absence would not be adequate.

The fourth and final factor is whether Woodring has an adequate remedy if this suit is dismissed.  She does – she can simply refile in state court.

In sum, considering these four factors leads to the conclusion that Cincinnati was an indispensable party at the time of filing.  Woodring's arguments to the contrary are so vague, conclusory, and bereft of citations to authority that only one is even worth discussing.  She claims that she will not have an adequate remedy if this suit is dismissed (the fourth factor) because her attorney is not admitted to practice in Indiana and thus cannot represent her in an Indiana state-court action.  But this is a mere inconvenience, not deprivation of an "adequate remedy."  Presumably, Woodring can find a way around this obstacle, whether by (1) filing suit in Ohio, where her attorney is admitted; or (2) hiring an Indiana attorney and filing suit in Indiana; or (3) getting her current attorney admitted in Indiana, whether permanently or *pro hac vice*, and filing suit in Indiana.  Her argument is thus unavailing.

Accordingly, the Court finds that Cincinnati was an indispensable party at the time this

case was filed. This means that the Court lacks jurisdiction over Woodring's claims and must dismiss the case.[3]  *Bailey*, 750 F.2d at 582.

## V. CONCLUSION

For the reasons given above, the stipulated motion to dismiss Charles Woodring's claims with prejudice (Docket # 18) is GRANTED. Cincinnati's petition to intervene as a defendant (Docket # 14) is also GRANTED. The remainder of the case (that is, Nancy Woodring's claims against the defendants) is DISMISSED for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(h)(3).

Enter for this 14th day of April, 2005.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

[3] Although Cincinnati argues in favor of dismissal in its briefs, it has not formally moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). Nonetheless, the Court has a duty to dismiss for lack of subject matter jurisdiction *sua sponte* under Rule 12(h)(3) when it is appropriate, as it is here.